No. 21,885.

A. J. BELLPORT, Jr., *Appellee*, v. J. C. HARKINS, and THE KAN-SAS CASUALTY AND SURETY COMPANY, *Appellants.*

SYLLABUS BY THE COURT.

1. NOTARY PUBLIC—*Liability for Damages Resulting from False Statement in Acknowledgment of Deed.* A notary public is not a guarantor or insurer of the identity of a person for whom he performs notarial services. The standard of official duty required of a notary public is the usual one which the law exacts of public officials, that of reasonable prudence, diligence, efficiency, and good faith. If the notary is negligent, he is liable, otherwise not.

2. SAME. A notary public cannot, without risk of personal liability for damages, certify to the identity of a stranger who seeks his notarial services; and the recital in a notary's certificate that a certain person appeared before him, etc., is a pertinent declaration of such person's identity.

3. SAME—*Evidence—Question of Fact for Jury.* The evidence touching the negligence of a notary public in certifying to the identity of a per-

son who invoked his notarial services examined, and held to present a fair question for a jury, and held not to be subject to a demurrer.

4. SAME—*Trial—Instructions.* The evidence examined, and held to require a pertinent instruction on the question whether the plaintiff relied on the notary's certificate of identity or on the plaintiff's own judgment as to the identity of a pretender who forged, executed, and acknowledged a deed of conveyance.

5. SAME—*Negligence in Taking Acknowledgment of Deed.* A notary public who takes the acknowledgment of an impostor to a forged deed, and negligently certifies to the impostor's identity, cannot escape liability merely because the name of the grantee is omitted from the deed.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed April 12, 1919. Reversed.

*Fred B. Stanley, Claude C. Stanley, Benjamin F. Hegler, George L. Siefkin,* and *William M. Morheiser,* all of Wichita, for the appellants.

*C. A. Matson, A. V. Roberts,* and *I. H. Stearns,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action on the official bond of a notary public.

The defendant, J. C. Harkins, held a commission as notary public in Sedgwick county. He was also a dealer in real estate. About October 1, 1915, a stranger called on Harkins at his office in Wichita and introduced himself as Amandus H. Barndt and said he owned some land in Wichita county. He produced an abstract of title showing certain lands to be vested in a person of that name, and spoke of desiring to trade the land for Wichita city property. Harkins listed the land, and the pretended Barndt was in and out of Harkins' office occasionally during the next two weeks, and was a guest at a local hotel. One E. F. Corwin, who was associated with Harkins in the real-estate business, introduced the pretended Barndt to the plaintiff; and this Barndt and plaintiff made a bargain in writing to exchange properties, plaintiff agreeing to convey certain town lots for the Wichita-county land. Two days later, the defendant Harkins and the pretender came to plaintiff's office, and the latter presented to plaintiff a deed to

the Wichita-county land, signed "Amandus H. Barndt," and duly acknowledged by Harkins as notary public.

The pretender disappeared. The plaintiff conveyed the Wichita-county property to H. C. Wear and F. S. Stoner. After a time the true owner of the property, Amandus H. Barndt, who resided in Illinois, discovered the forged conveyance of his property, and instituted judicial proceedings which eventually culminated in a judgment against the plaintiff; and he brought this action to recoup his damages against Harkins, the notary, and his surety.

From a judgment in plaintiff's favor, defendants appeal.

What is the extent of a notary's responsibility in certifying the acknowledgment of one who signs a document in his presence? Does the notary incur no liability in taking the acknowledgment of a stranger whose true name and identity are not those indicated by the signature? Can the party for whose benefit the instrument is executed, signed, and acknowledged rely to any extent upon the notary's certificate that the signer is not an impostor? Has the notary any duty to make, at least, a reasonable inquiry, touching the true name and identity of a stranger who desires his notarial services?

Our statute says:

"Notaries public shall have authority to take the proof and acknowledgment of deeds and other instruments of writing required to be proved or acknowledged, and to administer oaths, . . . to demand acceptance or payment of foreign or inland bills of exchange and of promissory notes, and protest the same for nonacceptance or nonpayment, as the case may require; and to exercise such other powers and duties as by the law of nations and commercial usage may be performed by notaries public." (Gen. Stat. 1915, § 6733.)

The statute relating to an officer's duty in taking acknowledgments reads:

"The court or officer taking the acknowledgment must indorse upon the deed a certificate, showing, in substance, the title of the court or officer before whom the acknowledgment is taken; that the person making the acknowledgment was personally known to the court, or to the officer taking the acknowledgment, to be the same person who executed the instrument; and that such person duly acknowledged the execution of the same." (Gen. Stat. 1915, § 2060.)

Section 2065 of the General Statutes of 1915 reads:

"Any officer who knowingly states a material untruth, in either of the certificates herein contemplated, may be indicted, and fined in any sum

35—104 Kan.

not exceeding the value of the property conveyed or otherwise affected by the instrument on which such certificate is indorsed."

The defendant's bond, sued oh in this action, recites:

"Now, therefore, if the said J. C. Harkins shall well and faithfully perform and discharge the duties of his said office according to law, then this obligation shall be void and of no effect, otherwise to remain in full force and effect."

The defendant notary's certificate reads:

*"State of Kansas, Sedgwick county, ss:*

"Be it Remembered, That on this 16 day of October, A D 1915, before me, the undersigned, a Notary Public in and for the county and state aforesaid, came Amandus H. Barndt, a widower, who is personally known to me to be the same person who executed the within instrument of writing and such person duly acknowledged the execution of the same.

"In testimony whereof, I have hereunto set my hand and affixed my notarial seal the day and year above written.

"Seal.                                    J. C. HARKINS, *Notary Public*

"Term expires September 21, 1919."

It will be noted that the notary certified to three pertinent facts: (1) that on October 16, 1915, Amandus H. Barndt, a widower, came before him; (2) that the notary personally knew that Barndt was the person who executed the deed; and (3) that Barndt acknowledged the execution of the deed.

Note the first of these: The notary certified that Amandus H. Barndt came before him. Now, it seems to have been an impostor who came; a mere stranger calling himself Amandus H. Barndt came before him. The notary was not justified in certifying that Amandus H. Barndt came before him for notarial services, without either knowing the identity of the person to be that of Amandus H. Barndt or having good reason to believe that it was Amandus H. Barndt who sought to invoke his official services. A notary is not justified in taking an acknowledgment and making a notarial certificate for a stranger who comes into his office and says: "My name is John Smith, I want to acknowledge a deed and have you make your notarial certificate to it." Such official conduct on the part of the notary would be grossly negligent, and he would undoubtedly be liable in damages to any person who suffered loss through reliance on the purported facts negligently and falsely recited in such notarial certificate.

While a notary public in this state is not a guarantor or insurer of the identity of the person whose notarial acknowledg-

ment he administers and certifies, he is bound, as all executive and ministerial officers are generally bound, to exercise reasonable diligence in the discharge of his official duties. Before certifying that a certain named person came before him and executed and acknowledged the execution of a deed, he must at least be reasonably sure of the identity of such person. This view of the court is not a recognition of the hypercritical doctrine of those agnostical casuists who contend that there is no such thing as positive knowledge, that nobody knows anything as a certainty. The court merely holds that a notary may only certify to the identity of a person with whom he is acquainted, and that acquaintance must be of sufficient duration and extent of familiarity that the notary has reasonable grounds upon which to base the recital in his certificate touching the identity of the person who appeared before him and acknowledged the execution of the instrument.

This view of our law makes it unnecessary to analyze the other rather clumsy recital in the second clause of the certificate—"who is personally known to me to be the same person who executed the within instrument of writing." Perhaps this recital considered alone does give some excuse for the curious contention that a notary who has seen a stranger execute an instrument may truthfully make such recital, but this recital is couched in the language of a subordinate adjective clause dependent upon and related to the first principal clause of the sentence, which declared that Amandus H. Barndt appeared before the notary. The first principal fact alleged in the certificate is the appearance of Amandus H. Barndt, and nothing that follows qualifies or lessens the force of the declaration that it was Amandus H. Barndt who executed and acknowledged the instrument. It takes nothing from the force of this that the statute concerning conveyances does not specifically provide for such recital. This court has heretofore said:

"The duties of a public office include all those which fairly lie within its scope; those which are essential to the accomplishment of the main purposes for which the office was created, and those which, although incidental and collateral, are germane to or serve to promote or benefit the accomplishment of the principal purposes." (*Moore v. Nation,* 80 Kan. 672, syl. ¶ 1, 103 Pac. 107.)

However, a majority of the court are of opinion that the trial court's instruction touching the extent of the notary's

requisite knowledge of the identity of the person seeking his notarial services prescribes too exacting a standard of official responsibility. The trial court's instruction, in part, said:

"Before the defendant, Harkins, as a notary public could make a valid acknowledgment to the deed in question he must have personally known Amandus H. Barndt; he must also have known that there was such a person as Amandus H. Barndt and that the person whose acknowledgment he was taking was that same Amandus H. Barndt. If he did not personally know that the person who appeared before him and acknowledged the deed under the name of Amandus H. Barndt was in fact Amandus H. Barndt, then his certificate of acknowledgment was false."

Personally, the writer sees little wrong in that instruction, but the better view—the view of a majority of the court—is that the usual standard of official duty prescribed for all executive and ministerial officers, that of reasonable prudence, diligence, efficiency, and good faith, in the discharge of official duties, is all that can justly be exacted at the hands of a notary public. (Gen. Stat. 1915, § 2065.) In 1 Ruling Case Law, page 308, the extent of the notary's liability is well stated:

"If an officer in taking and certifying an acknowledgment acts with the care and diligence that reasonably prudent and cautious persons exercise under like circumstances, he fully performs the duty imposed upon him and complies with the terms of his bond and oath of office. No legal liability can grow out of his act. In short, his liability is not that of an insurer. If he is to be held accountable at all, it must be on the ground of negligence, or malice, or corruption."

If Harkins had reasonable grounds for believing that the man who sought his notarial services was Amandus H. Barndt, he would not be liable for the unintended falsity of his notarial certificate.

The question of a notary's responsibility for certifying to the identity of a person who turns out to be an impostor has not arisen heretofore in this jurisdiction, and the statutes of other states touching the notary's duties and responsibilities are not precisely like our own; nor are the decisions of other states touching the extent of a notary's liability for falsely or erroneously certifying to identity, either controlling or harmonious. In some states, the notary is a judicial officer (1 R. C. L. 309), and the identity of a stranger who wishes notarial services may be proved before him by witnesses (1 C. J. 902), and in such cases the notary's certificate concerning the identity of the maker of a deed is a judicial conclusion, a judgment,

and, of course, no liability is incurred thereon. (*Clark v. Spicer,* 6 Kan. 440.) In our state, a notary is a ministerial or executive officer (*In re Huron,* 58 Kan. 152, 154, 48 Pac. 574; *The State v. Johnson,* 61 Kan. 803, 823, 60 Pac. 1068), and the general rule is that such officers are personally liable for willful or negligent misconduct. (*Prell v. McDonald,* 7 Kan. 426; *Symns v. Cutter,* 9 Kan. App. 210, 59 Pac. 671; *Bartlett v. Bullene,* an action on a notary's false certificate, 23 Kan. 606; *Hicks v. Davis,* 100 Kan. 4, 163 Pac. 799; *Cates v. Knapp,* ante, p. 184, 178 Pac. 447.)

In 1 Ruling Case Law, page 310, it is said:

"A notary who affixes his official signature and seal to a certificate of acknowledgment without examining it to ascertain whether the facts recited are true is guilty of negligence; and he is liable on his official bond for damages arising therefrom. . . . But a mere mistaken conclusion as to the identity of the grantor imposes no legal liability on the defendant officer. If, however, he takes the acknowledgment of one who is not personally known to him, relying simply on the introduction of a third person, instead of exacting the oath of identification prescribed by the statute, he and his sureties may be held answerable if it turns out that the acknowledging party was an impostor."

(See, also, note in 82 Am. St. Rep. 382 *et seq.;* and note in 49 L. R. A., n. s., 45; and text, notes, and citations in 1 C. J. 902-904.)

Such other matters urged by defendants as are likely to arise in another trial will be briefly noted. The demurrer to the evidence was properly overruled. It was a fair question for the jury whether the notary had been diligent or negligent in certifying to the identity of the man whose acknowledgment he had taken under the facts presented in this case.

There is some merit in defendant's contention that there should have been an instruction covering the question of fact as to whether the plaintiff relied upon the notary's certificate touching the identity of the impostor, or whether he had dealt with the latter on his own judgment as to the impostor's identity. Bellport made a preliminary contract with the impostor two days before the deed was executed. It is probably true that this preliminary contract was made through the agency of Harkins, but, if so, it was through the agency of Harkins and his associate, Corwin, as real-estate dealers, and not through the agency of Harkins as a notary; and it is for official de-

linquency that Harkins and his surety are here sought to be penalized in damages; not otherwise.

The court is not impressed with defendants' point that Harkins was not liable because the deed did not contain the name of the grantee. The practice of making deeds in blank is certainly not to be encouraged, but we will not countenance an official delinquency on the part of a notary by permitting him to escape through such a flimsy loophole as that. The evidence shows that the damages sustained by Bellport were traceable to the notary's wrongdoing—assuming that he was in fact negligent in certifying to the impostor's identity, and that Bellport relied upon that certificate.

The judgment is reversed, and the cause is remanded for a new trial.

PORTER, J. (dissenting in part) : I concur in the reversal of the judgment, but dissent from paragraphs 1 and 2 of the syllabus and corresponding parts of the opinion. The statute declares what the certificate of the acknowledging officer shall show. It provides that the officer must indorse upon the deed a certificate showing in substance his official title and "that the person making the acknowledgment was personally known to the . . . officer . . . to be the same person who executed the instrument; and that such person duly acknowledged the execution of the same." (Gen. Stat. 1915, § 2060.) The language of the statute is plain and unambiguous. It has always been my understanding that the only purpose of the certificate is to show that the person who acknowledged the instrument was the same person who executed it, and that this fact was personally known to the official; the notary merely certifies to the acknowledgment, and that he personally knows the fact that the one who acknowledged the instrument is the same person who executed it.

MARSHALL, J. (dissenting) : I am of the opinion that the judgment of the trial court should be affirmed.