No. 19,227.

THE CITIZENS STATE BANK OF GRAINFIELD, *Appellee*, v.
BERNICE M. HOUSER and J. C. HOUSER, *Appellants*.

SYLLABUS BY THE COURT.

ACTION ON NOTE—*Evidence—Error to Direct Verdict for Plain-
tiff.* An examination of the record disclosed some evidence
fairly tending to support the defendants' contention and it
was therefore error to direct a verdict for the plaintiff.

Appeal from Gove district court; JACOB C. RUPPEN-
THAL, judge. Opinion filed May 8, 1915. Reversed.

*A. D. Gilkeson,* of Hays, for the appellants.

*David Ritchie,* and *G. A. Spencer,* both of Salina, for
the appellee.

The opinion of the court was delivered by

WEST, J.: As a defense to an action by the bank on
a promissory note the defendant set up an alleged
agreement with the bank by which it was to guarantee
the payment of $1000 on a certain note which he had
signed with his son-in-law, Miller, as surety. The vital
question in the case was whether the bank made such
guarantee or whether its cashier, Smith, made it for
himself only. After the defendant, Houser, had testi-
fied a demurrer to the defendant's testimony was over-
ruled, but after the bank's testimony was introduced the
trial court directed a verdict in its favor. The appeal
presents the one question whether or not it was error
to take the case from the jury, and this depends on
whether or not the defendant, Houser, produced evi-
dence which entitled him to its consideration by the
jury.

While the cashier testified that practically all the
numerous notes leading up to and involved in the con-
troversy were held by him and not by the bank, he
stated that the bank had a mortgage on certain horses

and mules, and that he had a mortgage on certain other animals; that the bank took possession of some twenty-five head of stock in October, 1912. The defendant testified, among other things, that in 1910 he had a mortgage on the alfalfa grown on the ranch where his son-in-law lived, to secure a note of $2100, and had started to bale the alfalfa when the cashier told him if the hay was baled and shipped out it would be necessary to buy other hay for the stock on the place; "He did not know how the stock would be wintered and that they had a mortgage on it," and said:

"You ship that hay off of the ranch out, bale it and ship it and sell it, why that stock will starve, or we will have to buy hay from other points, and we will just as soon buy it from you. If you will turn this hay over to the Bank, why I will endorse on a new note, a thousand dollars I will guarantee the payment of the hay;"

Houser further testified that the hay was fed; that Miller fed it to the stock that the bank had there. "Smith told me and Miller told me. It was J. E. Smith, the cashier, that told me." In another place he testified:

"This man Smith was the cashier of the Citizens State Bank at Grainfield. And also at different times the president told me any business I done with Mr. Smith would be O. K. I talked with him about it. Mr. Lee Johnson is president. . . . There was an amount stated as to what I should be paid for the hay, one thousand dollars, at the time and as a part of the transaction that endorsement was made on that note that has been read in evidence. The Bank nor anyone else has ever paid me the thousand dollars. Nor has the guarantee been fulfilled on that note by reducing it one thousand dollars."

The answer alleged that the cashier in indorsing the guarantee on the twenty-one-hundred-dollar note was acting for the plaintiff, which was denied by the reply. This note was made payable to the order of J. C. Houser at the Citizens State Bank, and recited that "This note and mortgage with the same are given for the purpose of securing J. C. Houser, for any or all

notes which he has heretofore endorsed for E. E. Miller." Endorsed upon the back: "Oct-2-1911, for value received I hereby guarantee One thousand dollars of this note. J. E. Smith." Houser testified that during all the time in question J. E. Smith was the acting cashier and that the majority of the transactions he had with the bank were through Mr. Smith.

It is contended by counsel that except a few opinions and conclusions there is no evidence anywhere that the hay was sold to the bank. But from the statements which Houser testified were made to him by the cashier it might well be believed, in the absence of convincing testimony to the contrary, that it was really a transaction with the bank and not with the cashier, Smith, and while the evidence of this character and to this effect was somewhat meager, its weight and sufficiency were for the jury along with all the other testimony in the case, and it was error to disregard it and direct a verdict.

The judgment is therefore reversed and a new trial ordered.