No. 37,014

Benjamin H. Mitchell, *Appellee,* v. Charles H. Dawson, *Appellant.*

(191 P. 2d 913)

Opinion filed April 10, 1948.

J. N. Tincher, Clyde A. Raleigh, J. N. Tincher, Jr., all of Hutchinson, were on the brief for the appellant.

Don Shaffer and Abraham Weinlood, of Hutchinson, were on the brief for the appellee.

The opinion of the court was delivered by

HOCH, J.: This was an action to recover damages for personal injuries. The plaintiff prevailed and the defendant appeals. The defendant contends that he was prejudiced by an erroneous instruction to the jury and by undue restriction of cross-examination of the plaintiff.

No helpful purpose would be served by full recital of the pleadings or of the evidence. Appellant and appellee were fellow employees of the Stanolind Pipe Line Company. In his petition appellee alleged that on February 1, 1946, while he was sitting in the office of the company's booster station near Haven, Kan., where he was employed, the appellant entered "in a violent manner" and after making a complaint in a threatening voice, and after some preliminary maneuvering, not necessary to relate, willfully and maliciously struck him in the face with such force as to render him unconscious and that, by reason of this assault and battery, he suffered bruises about his head and face and "an angulation of the neck vertebrae." He further alleged that he suffered the pain and inconvenience of wearing a brace on his neck and had not been able to turn his neck to its natural and proper extent, and had suffered humiliation and mental anguish. He asked recovery of $103 for medical expenses; actual damages in the amount of $1,000, and punitive damages of $1,500, or a total of $2,603. In his answer, the appellant alleged in substance that the appellee was the aggressor and "grabbed two different potted plants and threw them at this defendant" and that when he did so he (the appellant) struck him with his fist, whereupon the appellee rushed into an adjacent room and, getting a large screw driver, threatened to kill the appellant with it. He further denied that the appellee was injured, as alleged, or that he was knocked unconscious, and asserted that if there was anything wrong with appellee's neck, it was not caused by the appellant. The reply was a general denial. Other allegations of the pleadings need not be recited. Trial was had on April 30, 1947. As

usually happens in such matters, the parties told conflicting stories, each one asserting that the other was the aggressor. With the issues of fact, we are not here concerned, as it is not our function to weigh conflicting evidence. The jury brought in a general verdict for the plaintiff and assessed his damages at $1,253. The jury made no division of the amount as between actual and punitive damages, and was not asked to do so.

Motion for new trial was made and overruled.

Appellant's principal contention is that he was prejudiced by the court's instruction No. 11, which was as follows:

"There has been evidence in this case suggesting that the plaintiff had an arthritic condition of the neck vertebrae at the time of the alleged battery and that this was the cause of his damage, if any, and there has also been evidence suggesting that if there was any such condition prior to that time that the alleged blow that he received aggravated this condition and caused damages to the plaintiff by reason of such aggravation.

"In this connection the jury are instructed that if you find for the plaintiff, you may take into consideration in assessing the amount of compensatory damages allowed, if any, the damage caused by any such aggravation of any previously existing condition with reference to the vertebrae, if any."

We must first consider whether appellant is entitled to review of this instruction. The appellant asserts that before the court delivered the instructions to the jury, it showed them to both parties and that "the defendant objected to each and every one of the instructions, as the court indicated that was the best system as he did not desire that much time be taken on them, but the defendant particularly directed the court's attention to instruction No. 11. That instruction No. 11 was not given upon any evidence in the record, was not based on any pleading on issues joined by plaintiff and defendant."

Appellant further asserts that upon the hearing on the motion for new trial he laid special stress on the alleged error in giving this instruction. The appellee does not specifically deny that the appellant objected to the instruction at the time it was given, or that the question was again called to the trial court's attention on the motion for new trial. He asserts, however, that the record does not show that the appellant objected to instruction No. 11, or to any of the instructions, and contends that no objection being shown, instruction 11 is not subject to review. In support, appellee invokes the established rule that if an instruction given is not clearly erroneous, a litigant who makes no objection to it when given, cannot be heard to complain about it on appeal.

We cannot agree with appellee's statement that the record is silent on the matter. It is true that neither the abstract nor the reporter's transcript, which we secured, discloses what was said when the instructions were given, nor upon the motion for a new trial. But the journal entry of judgment, approved by the attorneys for both parties, and the accuracy of which has not been attacked, recites:

"Whereupon the plaintiff and defendant finished introduction of all of their testimony and the testimony in rebuttal and sur-rebuttal, and the court prepared his instructions, and the defendant and *plaintiff were both allowed an objection and exception to each and every instruction."* (Italics supplied.)

The instruction is here for review.

As to instruction No. 11, appellant first contends that the instruction went entirely outside of any issue raised by the pleadings in that there was no allegation in the petition that appellant's blow injured him by aggravating an arthritic condition which he had. The appellee, however, did assert in his petition that he suffered injury to the neck vertebrae as a result of the blow, and if there had been evidence that he suffered this injury, in part at least, because of an arthritic condition previously existing, we could not well say that the pleading was not broad enough to cover such injury.

Appellant next contends that the instruction was erroneous because there was no evidence that plaintiff's injury resulted from an aggravation of an arthritic condition. This contention is good. Appellee does not call attention to any evidence, directly or by inference, that the blow aggravated a previously existing arthritic condition, and our examination of the abstract and the transcript discloses no such evidence. The plaintiff offered no evidence as to the existence of an arthritic condition, much less of any aggravation of such a condition resulting from defendant's blow. It is true that the defendant offered evidence of the existence of an arthritic condition in support of his contention that if the plaintiff had any neck injury, it was the result of such condition, and not the result of the blow. But there was nothing in this evidence to the effect that the blow aggravated the arthritic condition.

It is a well-established rule that instructions should not be given that are not applicable to the evidence. (Many cases cited, 9 West's Kansas Digest, Trial, ¶ 252; Hatcher's Kansas Digest, Trial, § 205.) In the instant case, the court not only gave an instruction not

applicable to any evidence, but incorrectly advised the jury that there had been evidence that the plaintiff had an arthritic condition which was aggravated by the defendant's blow, and that if it found for the plaintiff, it might take that fact into consideration in assessing compensatory damages. This was clearly prejudicial to the defendant, and requires that the case be sent back for a new trial.

In view of the fact that a new trial is to be had, we make brief reference to the contention that cross-examination of the plaintiff was unduly restricted. The complaint in this regard has to do largely with the exclusion of a number of letters which the plaintiff had written to officers of the company. The record is not very clear as to just what happened with reference to this matter. It appears that when the letters were handed to the witness and he admitted he had written them, objection to their admission was sustained. The record does not disclose whether these letters were again offered on the motion for new trial. The rule requiring that evidence, offered and excluded during the trial be produced upon the hearing on a motion for a new trial, does not apply to documentary evidence or to testimony received and thereafter stricken out. (*Kirkpatrick v. Wickwire,* 138 Kan. 230, 25 P. 2d 371, and cases cited, p. 233.) In any event, the appellee treats these letters as part of the record and solicits their examination by this court in support of its contention that it was not error to exclude them. It is not our purpose here to examine these letters in detail. Appellant contends that they were admissible as tending to show the motive of the plaintiff in bringing the action and also for the purpose of affecting credibility and weight to be given to his testimony. We need not here go into the question of motive, but we cannot say that there was nothing in any of the letters which the defendant was entitled to have put before the jury for purposes of cross-examination with a view to affecting his credibility and the weight to be given to his testimony. For instance, in one of the letters written after he had discovered, according to his testimony, a serious injury to his neck, he stated:

"With knowledge that I am acting without legal advice, I propose that C. S. Dawson and Stanolind Pipe Line Co., either or in conjunction pay me the sum of ($10000.00) *Ten thousand Dollars to satisfy damage claims over and above any industrial settlement.* This is not a demand but a request for a settlement that recognizes that this injury is something more than an ordinary industrial accident." (Italics supplied.)

In another letter written ten or twelve days later, he stated:

"It is relatively plain that should I be forced to choose between my job and any sum I might possibly collect as a result of the injury to my neck, I would be far ahead financially to choose the job. Let us forget the finances momentarily."

In the instant case, subsequently filed, he asked for damages totaling $2,603 as heretofore noted. Appellee contends that there is nothing inconsistent in any of these statements, and that the letters simply show that he was trying to get the company to bring about a settlement and avoid court action. The appellee may be right in the view that he would in no way have been injured by admission of the letters and cross-examination with reference to statements made in them. It is a well-established rule, however, that wide latitude of cross-examination of a party to the action should be permitted in any matters affecting his credibility or the weight to be given to his testimony. (*Kelly v. Meyer,* 156 Kan. 429, 435-437, 134 P. 2d 658, and cases cited.) Examination of the whole record convinces us that cross-examination was unduly restricted.

The judgment is reversed and the cause remanded with directions to grant a new trial.